**2017 UT App 109**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF R.M. AND S.R.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

A.R.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20170285-CA
Filed July 7, 2017

Third District Juvenile Court, West Jordan Department
The Honorable Tupakk A.G. Renteria
No. 1130889

W. Andrew McCullough, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Larry S. Jenkins and Lance D. Rich, Attorneys for
Intervenors M.M. and A.M.

Before JUDGES GREGORY K. ORME, J. FREDERIC VOROS JR., and
DAVID N. MORTENSEN.

PER CURIAM:

¶1     A.R. (Maternal Grandmother) appeals the juvenile court's
May 29, 2017 Findings of Fact, Conclusions of Law, and Order
that dismissed her petition for adoption of R.M. and S.R. We
affirm.

¶2     Maternal Grandmother raises two issues on appeal. First, she claims that the juvenile court erred in finding that she did not indicate her interest in being considered as an adoptive placement within 120 days of the shelter hearing. As a result of this finding, Maternal Grandmother was not entitled to a rebuttable presumption that it would be in the best interest of the children to allow her to adopt them. Second, she claims that it was not in the best interest of S.R. to remove the child from Maternal Grandmother's home and place her in another prospective adoptive home. In support, Maternal Grandmother states that she had a significant relationship with both children and was their primary caregiver "for long periods of time."

¶3     "[T]o overturn the juvenile court's decision, the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (brackets, citation, and internal quotation marks omitted). "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.* When an appellant seeks to challenge the sufficiency of the evidence supporting a juvenile court's finding or conclusion, "the appellant must include in the record a transcript of all evidence relevant to" the challenged finding or conclusion. Utah R. App. P. 54(b). Absent an adequate record on appeal, this court cannot address the issues raised and must "assume the regularity of the proceedings below." *In re K.L.S.*, 2015 UT App 51, ¶ 5, 345 P.3d 1281 (per curiam) (citation and internal quotation marks omitted). Because Maternal Grandmother did not provide a transcript to support her claims, this court "must assume that the findings and conclusions are supported by sufficient evidence." *See id.* We review questions of statutory interpretation for correctness. *See In re C.C.*, 2013 UT 26, ¶ 12, 301 P.3d 1000.

¶4     The State commenced a child welfare case regarding S.R. and R.M. in June 2015. Around the time of the petition's filing,

S.R. and her mother lived with Maternal Grandmother, and R.M. and her father lived with her paternal grandmother. Paternity has not been established for S.R. On July 15, 2015, the juvenile court held a shelter hearing, which resulted in the children being placed in the temporary custody and guardianship of the Division of Child and Family Services (DCFS). The children were allowed to remain in their respective homes. Following an August 26, 2015 adjudication of the children as neglected or abused children within juvenile court jurisdiction, the court set a permanency goal of reunification with the parents with a concurrent goal of adoption. On October 14, 2015, the juvenile court terminated reunification services and changed the permanency goal to adoption. With regard to that hearing, the juvenile court found, "The grandmothers were present in the courtroom and the court instructed both . . . grandmothers to complete the appropriate paperwork and home-study requirements if they desired to be considered as an option for adoptive placement for the children." On May 13, 2016, both parents relinquished their parental rights. The juvenile court received three competing adoption petitions, including Maternal Grandmother's June 2, 2016 petition. The juvenile court held a hearing on each petition before granting the adoption petition of M.M. and A.M., the paternal great aunt and great uncle of R.M., and dismissing the other petitions. The juvenile court entered findings of fact and conclusions of law on all three adoption petitions. We recite the findings and conclusions specifically relevant to the claims on appeal.[1]

---

1. The juvenile court made extensive and detailed findings in support of its determination that placement in the home of M.M. and A.M. for adoption was in the children's best interest. Because Maternal Grandmother has not challenged any of these findings and conclusions, it is unnecessary to recite them in this opinion.

¶5 The juvenile court found that it had not received a home study on Maternal Grandmother's home even though she "was instructed on October 14, 2015 to complete the appropriate paperwork and home study requirements if [she] wanted to be considered as an option for adoptive placement of the children." S.R. lived in Maternal Grandmother's home from the time of her birth in November 2012 until she was removed on February 1, 2016, and placed in the prospective adoptive home of M.M. and A.M. The other child, R.M., lived with Maternal Grandmother for some period of time, but the exact time was disputed. Only S.R. was removed from Maternal Grandmother's home on February 1, 2016. Maternal Grandmother was the only grandparent who had both children live with her and who was a caregiver for both children. The juvenile court found that Maternal Grandmother's claim that she had stated at the shelter hearing that she wanted to be considered as an adoptive placement was not supported by the audio recording of that hearing.

¶6 After the permanency goal changed to adoption in October 2015, R.M.'s maternal and paternal families each submitted the names of a couple from their side of the family. When the maternal and paternal families could not agree on one prospective placement, the names of both couples were submitted to the DCFS placement committee. The placement committee selected M.M. and A.M.—the couple proposed by the paternal family—as the prospective adoptive home supported for both R.M. and S.R. by DCFS. Only after DCFS decided to place both children with M.M. and A.M. did Maternal Grandmother advise DCFS that she wanted to be considered as an adoptive placement. Maternal Grandmother believed that since she was the only petitioner biologically related to both children, she was a better placement than M.M. and A.M. At the time of the hearing on her petition, the State had issued Maternal Grandmother a foster license for two children, effective August 25, 2016. Maternal Grandmother presented testimony from

family, former coworkers, and friends attesting to her suitability as an adoptive parent and her desire to adopt the children.

¶7    The juvenile court noted that Utah Code section 78B-6-133(9)(c) required the court to weigh the best interest of the children uniformly between petitioners if more than one petitioner satisfied a rebuttable presumption condition. *See* Utah Code Ann. § 78B-6-133(9)(c) (LexisNexis Supp. 2016). The juvenile court concluded:

> [Maternal Grandmother's] petition has not met the basic requirement of law to adopt these minor children. Specifically, the court held a shelter hearing on July 15, 2015, and [Maternal Grandmother] was present but did not file a written statement with the court within the required 120 days. [Maternal Grandmother] testified that she made it clear in court on July 15, 2015, that she wanted to be considered as a placement for [the children]. The court had an opportunity to listen to the audio recording from July 15, 2015, and no such request can be heard on the recording. [Maternal Grandmother] filed her petition for adoption on June 2, 2016, well past the required 120 days.

The court found that Maternal Grandmother's home did not present the most stable, secure, and well-rounded long-term placement for the children and therefore found that it was not in the children's best interest for Maternal Grandmother's adoption petition to go forward. The court expressed concern that Maternal Grandmother might not allow the children to maintain a connection with the paternal family, given her belief that the children should be placed only with maternal relatives. The juvenile court also had concerns that her income was not sufficient to support two additional individuals.

¶8 Maternal Grandmother first claims that the juvenile court erred "in determining that [she] did not indicate her interest in placement of the children within 120 days of the shelter hearing, where at least one of the children was in her physical care, and the other recently ha[d] been." Maternal Grandmother also states, "She actually had the child in her car[e], and the shelter hearing did not disturb that." Although Maternal Grandmother cites section 78B-6-133(9) as legal authority for her position, the petition on appeal contains no meaningful legal or factual analysis supporting her claim.[2]

¶9 Utah Code section 78B-6-133(9)(a) provides "a rebuttable presumption that it is in the best interest of a child to be placed for adoption with a petitioner" who satisfies the requirements of the section. Utah Code Ann. § 78B-6-133(9)(a) (LexisNexis Supp. 2016). First, the petition must have fulfilled the requirements of the Utah Adoption Act. *See id.* § 78B-6-133(9)(a)(i). Second, the petitioner must be a person "with whom the child has continuously resided for six months." *See id.* § 78B-6-133(9)(a)(ii)(A). Third, the petitioner must have "filed a written statement with the court within 120 days after the day on which the shelter hearing is held, as described in Subsection (8)(a)(iii)." *Id.* § 78B-6-133(9)(a)(ii)(B). In turn, subsection 78B-6-133(8)(a)(iii) requires "a written statement" to be filed with the court within 120 days after the shelter hearing "(A) requesting immediate

___

2. Amendments to Utah Code section 78B-6-133, effective May 12, 2015, added provisions pertaining to competing petitions for adoption. Section 78B-6-133(8)(a)(iii) provides that a court "shall grant a hearing" only to a petitioner who has filed the required written statement "within 120 days after the day on which the shelter hearing is held" or satisfies other prerequisites not applicable in this case. Although Maternal Grandmother did not file a written statement with the court as required by statute, the juvenile court held a hearing on her petition.

placement of the child with the petitioner; and (B) expressing the petitioner's intention of adopting the child." *Id.* § 78B-6-133(8)(a)(iii). There is no dispute that Maternal Grandmother did not file the written statement required by statute. At the hearing on her adoption petition, she claimed that she verbally indicated her intention to adopt the children at the shelter hearing. On appeal, she does not challenge the juvenile court's factual finding that the recording of the shelter hearing did not support this claim. Liberally construed, Maternal Grandmother's argument is that because she had physical custody of one of the children at the time of the shelter hearing and retained custody after the hearing, any requirement that she indicate her interest in being an adoptive placement was satisfied in an "actions speak louder than words" sort of way. Given the specific statutory requirements for a written statement, Maternal Grandmother's position lacks merit, and she was not entitled to a rebuttable presumption that it was in the children's best interest to be placed with her for adoption. In addition, Maternal Grandmother has not demonstrated that she satisfied the remaining prerequisites for the rebuttable presumption, including satisfying the requirements of the Utah Adoption Act.

¶10   Maternal Grandmother also argues that it was not in the children's best interest to be removed from her home and placed in the prospective adoptive home. Liberally construed, Maternal Grandmother's argument is that the decision by the DCFS placement committee to place both children with M.M. and A.M. was not in their best interest. This argument does not address any relevant issue for review of the juvenile court's decision on the competing adoption petitions. The juvenile court concluded that only M.M. and A.M. were entitled to a rebuttable presumption under section 78B-6-133(9)(a). "The court may consider other factors relevant to the best interest of the child to determine whether the presumption is rebutted." *Id.* § 78B-6-133(9)(b). Even if this court were to assume that it was not in S.R.'s best interest to be removed from Maternal Grandmother's

home and placed in the prospective adoptive home, that determination alone would not require a reversal of the juvenile court's decision on the merits of the competing adoption petitions. The juvenile court made extensive findings supporting its determination that it was in the children's best interest to grant the adoption petition of M.M. and A.M. Maternal Grandmother has not challenged any of those findings or the related conclusions in this appeal. "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

¶11    Accordingly, we affirm.

———————